61 F.3d 913
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric S. COSKY, Defendant-Appellant.
 No. 94-50377.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 10, 1995.*
Decided July 19, 1995.
 
 1
 Before: FARRIS and O'SCANNLAIN, Circuit Judges; TASHIMA,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Eric Cosky appeals the sentence imposed upon him pursuant to the Sentencing Guidelines following his jury conviction for conspiring to manufacture methamphetamine and manufacturing methamphetamine. We affirm.
 
 
 4
 * Cosky argues that the district court erred in calculating his base offense level. Cosky contends first that the district court should not have relied upon the total volume -- in this case, six kilograms -- of the liquid mixture containing methamphetamine in setting his base offense level. To support his contention, Cosky points to Application Note 1 of section 2D1.1 of the Guidelines, which provides that "[m]ixture or substance [as used in this guideline] does not include materials that must be separated from the controlled substance before the controlled substances can be used."
 
 
 5
 Although Cosky correctly states the law, he has misunderstood the actions of the district court. The court did not use the six kilogram methamphetamine solution as the base figure. Rather, the court sentenced Cosky based upon the 1.6 kilograms of pure methamphetamine present in that solution. Such sentence accords with the Guidelines.
 
 
 6
 Cosky takes issue with the 1.6 kilogram figure as well, however. Specifically, Cosky contends that the 1.6 kilograms of pure methamphetamine were in fact 1.6 kilograms of methamphetamine hydrogen iodide ("Meth HI"), a nonconsumable substance that cannot be used to establish the offense level. As we understand the declaration of the DEA chemist, however, methamphetamine in the form of Meth HI is nonetheless pure methamphetamine. [CR 217]. Further, under the Drug Abuse Prevention and Control Act, crimes involving methamphetamine are punishable regardless of whether the methamphetamine is in salt form. See 21 U.S.C. Sec. 841(b)(1)(A)(viii) (providing mandatory minimum sentences for crimes involving "methamphetamine, its salts, isomers, and salts of its isomers"). We are accordingly unpersuaded by the distinction which Cosky attempts to draw.[1]
 
 II
 
 7
 Cosky next argues that the district court erred in considering as relevant conduct the government's assertion that he could have manufactured an additional four kilograms of pure methamphetamine.
 
 
 8
 Application Note 12 of section 2D1.1 of the Guidelines provides:
 
 
 9
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substances. In making this determination, the court may consider, for example, ... the size or capability of any laboratory involved.
 
 
 10
 The capability of a drug laboratory is a factual issue which we review for clear error. See United States v. Bertrand, 926 F.2d 838, 846 (9th Cir. 1991).
 
 
 11
 Cosky contends that he could not have manufactured additional kilograms of methamphetamine because he lacked ephedrine, an essential ingredient. This court has held that a laboratory is capable of producing additional amounts if the missing ingredient could be obtained easily. See id.[2] The evidence at trial persuades us that the district court did not err in finding that ephedrine was easily obtainable. As Cosky's accomplice, Rebecca Godson testified, Cosky merely had to order the ephedrine over the phone for delivery the next day. [RT at 196]. The fact that Cosky next had to extract the ephedrine from the tablets purchased does not make the ephedrine less easily obtainable; when we use the phrase "easily obtainable," our inquiry focuses upon ease of procurement.
 
 III
 
 12
 Cosky next contends that the district court erred in departing upwards two levels for his role as organizer. See U.S.S.G. Sec. 3B1.1(c) (providing for two-level increase in base offense level where defendant is "organizer, leader, manager, or supervisor" of crime at issue). We review the district court's conclusion for clear error. See United States v. Sanchez, 908 F.2d 1443, 1447 (9th Cir. 1990).
 
 
 13
 To merit an upward adjustment under section 3B1.1, "the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir. 1990) (quotation omitted).
 
 
 14
 Here, Godson, Cosky's accomplice, testified that she initiated contact with the confidential informant at Cosky's bidding.[3] [RT at 160]. Cosky then directed the confidential informant to locate a warehouse in which to house the proposed methamphetamine laboratory. [RT at 169]. Cosky discussed with Godson his plans to install a sophisticated ventilation system in the warehouse, and to hire several employees to manufacture the methamphetamine under Cosky's supervision. [RT at 181]. Cosky directed Godson to purchase the necessary precursor chemical hydriodic acid and gave her a $2500 cashier's check to this end, [RT at 182-83]; he also gave Godson cash to pay for the purchase of ephedrine [RT at 198]. See United States v. Schubert, 957 F.2d 694, 696 (9th Cir. 1992) (defendant was "organizer" because he provided business associate with money to purchase drugs). And Cosky directed Godson to purchase the necessary laboratory apparatus, providing her with a detailed list of his requirements, [RT at 188, 213-17]; when the initial plan for these purchases did not succeed as anticipated, he devised a new plan. See United States v. Koenig, 952 F.2d 267, 274 (9th Cir. 1991) (defendant was "manager" because evidence indicated he played role in directing co-conspirators). In light of such evidence, we conclude that the district court did not clearly err in finding that Cosky was an organizer or leader and adjusting upwards on this ground.[4]
 
 IV
 
 15
 Cosky next argues that he is entitled to a two-level reduction for acceptance of responsibility. See U.S.S.G. Sec. 3E1.1(a) (two-level reduction warranted where "the defendant clearly demonstrates acceptance of responsibility for his offense").
 
 
 16
 It is clear that, in certain circumstances, a defendant's failure to plead guilty will not preclude that defendant from manifesting a genuine acceptance of responsibility sufficient to merit a downward adjustment. See United States v. McKinney, 15 F.3d 849, 852 (9th Cir. 1994) ("A defendant is not required to plead guilty to receive the acceptance of responsibility reduction."). The focus in such cases is upon the defendant's contrition. "Where the defendant's statements and conduct make it clear that his contrition is sincere ... he is entitled to the reduction even if he is convicted after a trial." Id.
 
 
 17
 Cosky contends that he manifested contrition by (1) admitting that he was involved in the manufacture of methamphetamine; (2) presenting only a perfunctory defense at trial; and (3) submitting a letter to the district court wherein he expressed remorse for his actions. The record belies Cosky's assertions, however. The trial transcript indicates that Cosky contested the government's evidence at trial, arguing that he sought to make methylphenatine, and not methamphetamine; indeed, Cosky called an expert witness to support his contention. Nor does Cosky's letter to the court persuade us of his contrition. Rather than confessing to his crime, Cosky continued to allege that he intended to manufacture methylphenatine; and instead of accepting responsibility for his actions, Cosky sought to blame his conduct on others.[5]
 
 
 18
 We will not disturb a district court's determination regarding acceptance of responsibility unless it is without foundation. United States v. Innie, 7 F.3d 840, 848 (9th Cir. 1993), cert. denied, 114 S. Ct. 1567 (1994). Cosky has failed to satisfy this stringent standard of review.
 
 V
 
 19
 Cosky's final contention is that the district court failed to state its reasons for imposing a sentence which exceeded by twenty months the minimum sentence.
 
 
 20
 18 U.S.C. Sec. 3553(c) requires that the court, at the time of sentencing, state in open court its reasons for imposing a particular sentence within the sentencing range if that range exceeds twenty-four months. Such statement "must include a discussion of the factors used to choose a particular sentence within the sentencing range." United States v. Upshaw, 918 F.2d 789, 792 (9th Cir. 1990), cert. denied, 499 U.S. 930 (1991). "These factors include individual considerations of background, character, and conduct, as well as the systemic goals of deterrence, rehabilitation, and consistency in sentencing." Id.
 
 
 21
 The record is quite clear as to the court's choice of sentence. The court explained, in part,
 
 
 22
 You have done this before, and I have the feeling that letting you go on a light sentence would have been a terrible mistake. I think you have done a lot of harm by what you have done and that is why I did not give you just the 30 years.... I think when I consider how much you were going to make and how many times you have engaged in this kind of thing before I think it is an appropriate sentence.... I think when you mature you are likely going to go out and do the same thing again and that is why I imposed the sentence that I did.
 
 
 23
 [ER 13-14]. This statement provides ample support for the sentence selected.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R. App. P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable A. Wallace, Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Cosky also contends that he intended to manufacture methylphenatine, rather than methamphetamine, and accordingly should be sentenced under 21 U.S.C. Sec.841(b)(1)(C) (governing controlled substance analogues), which permits a 20-year maximum sentence. Cosky's argument is unavailing. Section 841(b)(1)(B)(viii), under which Cosky was sentenced, governs violations involving "10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." Regardless of what Cosky claims to have intended to produce, he was convicted of conspiring to manufacture methamphetamine and of manufacturing methamphetamine; because his crime involved just such a mixture as referred to in subsection B, he was properly sentenced thereunder
 
 
 [2]
 Although Bertrand involved a different Guidelines provision -- Application Note 2 of Sec. 2D1.4 -- the language of such provision is virtually identical to the provision at issue here -- Application Note 12 of Sec. 2D1.1
 
 
 [3]
 Cosky also argues that the district court violated his due process rights in enhancing his sentence based on the "self-serving ... uncorroborated and unsubstantiated" statements of Godson. Because Cosky did not raise this argument until his reply brief, he has waived it. See Eberle v. Anaheim, 901 F.2d 814, 817-18 (9th Cir. 1990)
 
 
 [4]
 Cosky argues that at the most he had authority over only one other participant, Rebecca Godson, and thus that he cannot be considered an organizer. This factor is not dispositive, especially in circumstances such as this, where there are other indications of leadership. See United States v. Barnes, 993 F.2d 680, 685 (9th Cir. 1993) ("The fact that [the defendant] did not supervise more than one participant does not preclude the enhancement as a matter of law."), cert. denied, 115 S. Ct. 96 (1994)
 
 
 [5]
 Contrary to Cosky's suggestion, this case differs substantially from McKinney. In McKinney, the defendant confessed immediately to the crime and assisted the authorities in making a case against him. At trial, McKinney sought to plead guilty, but was rebuffed by the court; subsequently, McKinney called no witnesses and raised no affirmative defense. Cosky has provided no similar indications of remorse